LORIN STOW *vs.* SAFFORD STEVENS.

CHITTENDEN,
January,
1835.

Where a party binds himself to execute a good and valid deed of land, with the usual covenants, he is obliged to give a deed which conveys a good and sufficient title.

When an obligor binds himself, upon the payment of money and the execution of notes, at a certain time, to convey land by a good and valid deed, and previously conveys the same to another; the obligee must, in assigning a breach, aver his readiness to pay the money and execute the notes, although he need not tender a performance.

In such case, where money was paid at the time the bond was executed under seal, the obligee is at liberty to regard the act of the obligor, in deeding the land to a stranger, as a rescinding of the contract, and may resort to the common counts for his remedy.

This was an action of debt, on a bond under seal. The declaration included the common count for money had and received. A full statement of the pleadings and facts in the case is incorporated into the opinion of the court.

*C. Adams for defendant.*—1. The payment of the money and the execution of the notes was a condition precedent to the execution and delivery of the notes. It is true, both acts were to be done and performed at the same time; but from the peculiar phraseology of the condition of the bond, the money was to be paid and notes delivered *first.* The expression is, " if after the payment, &c. Stevens shall," &c.; and from a fair construction, Stevens would be entitled to a time after the payment sufficient to make out the deed.—*Thorpe* vs. *Thorpe,* 1 Salk. 171.

2. The condition of the bond would be satisfied by the execution and delivery of *a deed,* whether the deed conveyed the title or not. The condition is not that the defendant should convey a good title; for it is evident, that plaintiff relied for his security as to the title upon the covenants which it was stipulated the deed should contain. To test the correctness of this, let us suppose the plaintiff had paid the money, &c., and that defendant, without having deeded to Hawkins, had made his deed and offered it; could plaintiff have refused the deed, because, in truth and in fact, the defendant's title was defective? Certainly not.

3. The excuse offered by plaintiff, for his neglect to pay the money and execute the notes, is not a valid excuse. This is evident, if we are correct in our previous propositions. But it may be further remarked, that for aught that appears, as indeed is the fact, Stevens remained in the possession of the land, and could have given the plaintiff absolute seizure. Besides, although the deed to Hawkins may have been absolute on the face of it, it may have been a trust-deed, for the very purpose of enabling Stevens to secure it for the plaintiff; or it may have been to secure Hawkins

CHITTENDEN,
January,
1835.

Stow
vs.
Stevens.

for money or other things, and Stevens held the defeasance in his pocket, and could have discharged the land by the very money to be paid by the plaintiff. It may be further remarked, that, let the character of the deed to Hawkins be what it will, if after Stevens should have executed his deed to plaintiff, he had re-purchased the title of Hawkins, the title would have enured for the benefit of plaintiff, and the covenants in the deed would have been healed.

Had it been the intention of the parties to bind Stevens to convey a good title, it would have been explicitly stated; but instead of that, defendant is to execute a deed with covenants, and plaintiff relies for his title upon those covenants. There is not one word in the conditions indicating that defendant was to convey a good title. He might be holden on his covenants in the deed, if his title proved bad; but the condition in the bond is not broken because of a defective title. It would be a novel issue growing out of the condition of a bond, that defendant's title was not perfect. Stevens' title may have been, in fact, imperfect at the time of his deed to plaintiff, as possession for fourteen years. But if plaintiff had accepted the deed, and entered upon the land, and Stevens had protected him in that possession, until his title became perfect by the statute of limitations, the covenants would have been healed. The expression, *a good and valid deed,* relates only to the form of the deed, and the manner of its execution, and has no relation to the title of the land.—1 Saund. 320. 5 Mass. Rep. 494, *Aiken* vs. *Sanford.*

4. But if, as plaintiff contends, they were mutual covenants, to be performed at the same time, plaintiff must have been ready to perform his part; and if he had not been ready, he could not recover of the defendant, even if defendant was not ready, or had refused.

5. It must be averred in declaration, that plaintiff was ready; and without such averment, the first fault is on his part, and he cannot recover.—Chitty on B., 317. *Morton* vs. *Lamb,* 7 T. Rep. 125. *Rawson* vs. *John,* 1 East. 203. *Archbishop Canterbury* vs. *Willis,* 1 Salk. 172.

*Hyde and Peck for plaintiff.*—As the plea in this case is mere matter of form, containing nothing traversable, the question is, whether a sufficient breach is assigned. As to the construction of the instrument, it is not conceived to be material, whether the stipulations of the parties are concurrent acts, or whether that on the part of the plaintiff is considered a condition precedent; but if it

be material, it is evident that they are concurrent acts, to be per- <span>CHITTENDEN, January, 1835.</span>
formed at the same time. Modern cases show, that the courts
have taken a common sense view of the subject, and adopted the <span>Stow vs. Stevens.</span>
intention of the parties as the criterion, to the exclusion of all
technical niceties, arising from particular words, found in some of
the older cases. Two things to be done on the same day are taken
to be done at the same time, and are concurrent acts.—Saund.
Rep. 320, n. 4. 11 Pick. 151, *Howland* vs. *Leach*. 11 John.
Rep. 525, *Judson* vs. ——.

As the defendant is to deliver the deed *on* the payment, the
intention is clear; and although the word *after* is subsequently
used in the same sentence, it cannot control the construction. If
there is any ambiguity, it is to be taken against the defendant. The
The case of *Judson* vs. —— is stronger than the present. The
plaintiff was to execute a deed after payment, yet held that pay-
ment was not a condition precedent. But as it is expressly stipu-
lated, that both acts are to be done on the same day, it cannot be
suppo´sed the intention of the parties was, that the plaintiff should
give the defendant a further credit, and rely upon his bond; espe-
cially, as the sum to be paid greatly exceeded the penalty.

The covenant to "execute and deliver a good and valid deed,
with the usual covenants of seizin and warranty," is a covenant to
convey a good title. The plaintiff was not bound to accept a
mere formal deed, which conveyed no color of title, and the cov-
enants of which would be broken on giving the deed. A compli-
ance with the words of a covenant is not sufficient, unless it appear
to be according to the intent.—Teat's case, Cro. Reports, 7.
Skin. 39, *Chute* vs. *Robinson*. 2 John. Rep. 595—613, *Judson*
vs. ——. 11 John. 525, *Deorth* vs. *Williamson et al.* 2 Sarg.
and Rawle, 498, *Porter vs. Noyes*. 2 Greenleaf, 22.

Therefore the defendant, by his conveyance before the day,
wholly disabled himself to perform on his part. Or, if the con-
struction be, that the plaintiff contracted for the defendant's title
merely, the consequence is the same; as in either case, the de-
fendant had parted with or destroyed the thing contracted for. The
case of *Aiken* vs. *Sandford*, 5 Mass. 494, where the court seem
to hold that the words of the covenant apply to the form and exe-
cution of the deed, was a mere incumbrance by way of mortgage,
and not an absolute want of title; and yet, in that case, the court
expressly say, that the grantor must be seized. The conveyance
to Hawkins, by Stevens, on the 31st of January, of the same land
which was to be by him conveyed to Stow, on 1st April following,

CHITTENDEN,
January,
1835.

Stow
vs.
Stevens.

was, *ipso facto*, a breach of the contract on the part of Ste¹
as it wholly disabled him to perform it.—Co. Lit. 220, 221
Vin. Ab. 221, 224. Shep. Touch. 172, 381, 388. 1 Bι
117, *Matterson* vs. *Jolly*. 1 Vint. 271. *Bradley* vs. *Osterha* !,
13 John. 404.

This is a breach for which the plaintiff may maintain an action
without showing performance, or a tender of performance, on his
part; as the law would not compel him to do a nugatory act, and
incur additional trouble and expense, without a possibility of ad-
vantage. "*Lex neminem cogit ad vana et inutilia peragenda.*"—
Sug. Ven. 165. *Scott* vs. *Sir Anthony Maine*, Cro. Eliz.
449; upon which error was afterwards brought in King's Bench,
and judgment affirmed.—Id. 479. The same case is more fully
reported in 5 Co. 21, Sir Anthony Maine's case. So in *Robin-
son* vs. *Amps*, T. Ray. 25, covenant that if the plaintiff pay a
certain sum, 24th June, 1660, then the defendant shall deliver up
a certain recognizance to be cancelled, &c.—breach assigned, that
the defendant, 21st Oct. 1659, prosecuted an extent on the recog-
nizance. Breach held to be well assigned. · *Griffith* vs. *Lead-
hurst*, T. Ray. 464. *Rayna* vs. *Alexander*, Yel. 76, Metcalf's
Ed., note to the above case, and the cases there cited. The most
of these cases are noticed and approved by the court in the case
of *Hopkins* vs. *Young*, 11 Mass. Rep. 302, which is also an au-
thority in point. *Knight* vs. *Crockford*, 1 Esp. cas. 189. *Se-
ward* vs. *Willock*, 5 E. 198. Arch. Pl. 168. *Bewell* vs. *Par-
sons*, 10 E. 359. *Newcomb* vs. *Bracket*, 16 Mass. Rep. 161.
This doctrine is consistent with the rule of pleading on this subject.
The rule is, where performance by the defendant depends on some-
thing executory, the plaintiff must aver performance, *or some ex-
cuse for non-performance.*—Chit. Pl. 310, 324. The question
in this case is not, what amounts to a performance, but what is an
excuse for non-performance. Any act of the defendant, which
disables the plaintiff to perform, excuses the plaintiff even from an
offer to perform. Is not the reason the same, where the defendant
disables *himself* to perform? So the defendant neglects to do the
first act, where it is incumbent on him to perform it.—*Hotham* vs.
*East India Co.* 1 T. Rep. 638. *West* vs. *Emmons*, 5 John. 179.
So where the defendant discharges the plaintiff, by declaring his
intention not to perform on his part.—*Jones* vs. *Burkley*, Doug.
684. The same where the defendant refuses to perform on his
part.—*Rawson et al.* vs. *John*, 1 E. 203. What more unequiv-
ocal declaration of such intent, or more absolute refusal, can be

CHITTENDEN,
January,
1835.

Stow
vs.
Stevens.

conceived, than an act of the defendant which disables him to perform and destroys the thing contracted for. These cases show that the party is excused at the very point where it appears his act would be nugatory. Upon the same principle, in this case, a readiness need not be averred; for if by readiness is implied a willingness, it is not traversable; but if it implies a *preparation* and *ability*, the plaintiff would be held to the proof, and consequently bound to be in a state of preparation on the day, and thus to do a nugatory act, which Lord Kenyon says, in the case of *Rawson et al.* vs. *Johnson*, would be repugnant to common sense. Suppose, instead of money and notes, it had been wood, hay, lumber, or some other ponderous article; would the plaintiff be bound to transport and deliver it? If not, why should he be bound to provide himself with the property?—*Corblyan* vs. *Lansing*, 2 Caine's Cases, 213.

The distinction is between a contract for a thing in *specie*, and a thing in *kind*. Where the defendant contracts to deliver a specific and determinate thing, the plaintiff thereby acquires an interest in the thing itself, and such an interest as a court of equity—and in those States where they have no court of equity, a court of law—will protect by enforcing a specific performance; and any act of the defendant, by which that interest is impaired, or the thing itself destroyed, is a breach of the very essence of the contract, wholly disables the defendant to perform, and renders any act on the part of the plaintiff entirely nugatory, as no other thing of the kind will satisfy the contract.

But where the contract is to deliver something in *kind*, dependent on some act of the plaintiff, a neglect on the part of the defendant to perform, or to put himself in readiness, is not such a breach as the plaintiff can maintain an action upon, unless he is prepared to show at least a readiness on his part. *The cases on which this rule of pleading is founded, and where this averment has been held necessary, are all cases where the contract was for a thing in kind, or cases where the defendant had done no act to disable himself to deliver the specific thing which formed the object of the contract.* See cases cited on this subject by Chitty, Gould, Archibald, Bacon and Williams, and note to case of *Portage* vs. *Cole*, Saund. Rep. 320. This distinction is fairly deducible from the cases, sustains the rule of pleading, and reconciles all the authorities on this subject.

The plaintiff has a right to consider the contract rescinded, and recover for money had and received.—*Farrar* vs. *Nightingale*, 2

CHITTENDEN,
January,
1835.
────────
Stow
vs.
Stevens.
Esp. 639.   *Giles et al.* vs. *Edwards*, 7 T. Rep. 181.   *Johnson*
vs. *Johnson*, 3 Bos. and Pul. 162.

There being a written contract, under seal, can make no differ-
ence, as the bond is for a deed, and not for the repayment of the
money; especially if the plaintiff cannot recover on the bond with-
out paying the residue of the price and delivering the notes.   Had
the notes been delivered, the non-delivery of the bond would be
a good defence in an action on the notes.   So the want of title
would be a good defence, had the deed been delivered, and the
party would not be remitted back to the covenants of the deed,
especially as he did not take possession under the deed or contract.
*Frisbee* vs. *Haffnagh*, 11 John. Rep. 50.   *Greenleaf* vs. *Cook*,
2 Whea. Rep. 13.   On the same principle, the party may recover
back what he has already paid under the contract. ──────── vs.
*Meecham*, 1 Dal. 428.   *Weaver* vs. *Bently*, 1 Car. Rep. 47.

The opinion of the court was delivered by

MATTOCKS, J.—This was an action of debt, demanding $1,200
in several counts, declaring on a penal bond, dated August 11,
1822, for $200,00; also in general counts in debt, for money lent
and goods sold and delivered.   To these latter counts defendant
pleaded *nil debit*, and the plaintiff joined.   To the former the
defendant prayed oyer of the condition of the bond, which was,
"that on the payment of the sum of $100,00, in current money,
by the said Loren to the said Stevens, and also on the execution of
two promissory notes, by the said Loren to the said Stevens, for
$105,00 each, one payable in one year and the other in two years
from the date, with interest, on the first day of April next, (1833)
if the said Stevens shall execute and deliver to the said Loren, on
the said first day of April next, after the payment of said sum of
$100, and the execution and delivery of said promissory notes by
the said Loren to the said Stevens, a good and valid deed, with the
usual covenants of seizin and warranty," of certain lands, then the
bond to be void, otherwise in force.   The defendant then pleaded
in bar, that the plaintiff did not, on the first day of April, 1833,
pay said $100, nor execute said two promissory notes of $105
each, although thereto requested by defendant; and that he the
defendant was ready and willing to have executed a deed according
to the condition of the bond, if the plaintiff had performed on his
part.   To which plea the plaintiff replied, protesting that the de-
fendant did not request the plaintiff to pay the money and execute
the notes, and that the defendant was not ready to execute and

deliver a good and valid deed; that at the time of executing the bond declared upon, the defendant was well seized of the lands in question, and had lawful authority to sell and convey the same; yet afterwards, and before the first of April, 1833, to wit, on the 31st of January, 1833, the defendant sold and conveyed the same lands to one Alfred Hawkins; and the defendant has never since had any right or title to said land, and whereby he had disabled himself from performing the condition of said bond; "for which reason the said Stone did not, on the said first day of April, 1833, pay to the said Stevens the sum of $100, and execute and deliver to the said Stevens the said two promissory notes, but neglected so to do, as he lawfully might, for the cause aforesaid;" and averring, that the defendant has never executed to the plaintiff any deed of said lands, and so has broken his covenant. To which replication the defendant demurred, and the county court adjudged that the replication was insufficient. On the trial of the issue in fact, under the plea of *nil debit*, the plaintiff offered to show in evidence, that at the time the bond in the declaration mentioned was executed, the plaintiff paid to the defendant, in personal property and money, about $125, as a part of the price of the lands; and that the remainder of the purchase-money was to be paid at the time and in the manner mentioned in the condition of said bond. The plaintiff offered also to show all the facts set forth in his replication; and this evidence being objected to by the defendant, was rejected by the court, and judgment passed for the defendant; and whether these decisions were correct, are the questions submitted.

As to the sufficiency of the replication, the condition of the bond no doubt requires the money to be paid and the notes given before the plaintiff is entitled to the deed; that is, the defendant is not bound to part with his land until he has his money and his security; but whether the plaintiff was bound actually to hand over without a deed being given simultaneously, is not now in question, as this part of the case must be decided upon the validity of the plaintiff's excuse for not performing on his part; for unless this is valid, there is evidently no breach of the condition alleged. The defendant's counsel contends, that the expression, "a good and valid deed, with the usual covenants," relates only to the form of the deed and the manner of its execution, and not to the title of the land; and relies on 1 Saun. 320, and *Aiken* vs. *Sanford*, 5 Mass. Rep. 494. There is nothing in Saunders, nor in the notes, to this point. In *Aiken* vs. *Sanford*, which was debt on a penal bond, conditional to sell and convey to plaintiff certain lands in a

5

Chittenden,
January,
1835.
──────
Stow
vs.
Stevens.

reasonable time, after the payment of a certain sum of money, on the defendant's showing that he had tendered a deed, it was objected that when the deed was offered the land was subject to a mortgage, although it was paid off before action was brought; and the court say, " that the validity of this objection depends upon the condition which required a conveyance of the land by a good and sufficient deed of warranty. The import of these words is confined to the form of the deed and its execution, and not to the title. If the deed was of a proper form, and regularly executed, and the grantor was seized, so that the land was conveyed by it, the condition in this case was performed." But they also observed, that they did not mean to determine, that in no case these words should be considered as applying to the title. If the money was to be paid on receiving the deed, it might be a reasonable construction, that a good and sufficient title should be conveyed; otherwise, the purchaser might part with his money, not merely for the land, but for a lawsuit also. This *per curiam* opinion seems upon the whole to make for the plaintiff; for here the plaintiff, when he contracted to convey, was seized; but by his own act he had become disseized before the day of performance, and his deed would not have conveyed the land; and the deed, besides, was to have been given the same day, although after the payment of the money, which is not giving credit or time for the deed after the payment.

Among the cases cited by the plaintiff's counsel is Teat's case, in Cro. Eliz. p. 7. It consists of twelve lines of black letter, and is worth transcribing, not only because it is pithy and appropos, but to remind the profession that to say all that is needful in few words is among the lost arts. " Debt upon an obligation : the condition of the obligation was, that if the obligor deliver to the plaintiff an obligation, in which he was obliged to the defendant before such a day, then, &c. The defendant sueth the plaintiff upon that obligation and recovereth, and afterward, and before the day, he delivereth the obligation to him. The question was, if this were a performance of the condition. Wray and the other justices held that it was not. Although the words were performed, yet the intent was not performed; for the intent was, he should have the obligation for his discharge, which is not by the delivery of it at the day, for it is transferred in *rem judicatum*; and notwithstanding the delivery of the bond, yet he may have benefit of the judgment." This was a point blank decision, before circumlocution became professional, that performance to the letter was not performance to the sense. And may the countermarch of mind

CHITTENDEN,
January,
1835.

Stow
vs.
Stevens.

bring posterity back to such unsophisticated decisions and to such clearness in reporting; and then to gain a cause, it will not be necessary to "carry three camel loads of books before the Prætor."

*Chute* vs. *Robinson*, 2 John. 613, and *Judson* vs. *Wass*, 11 John. 525, show that a deed with covenant of warranty means a deed which carries the title with it. In *Porter* vs. *Noyes*, 2 Green. 22, it is decided that a contract to make a warrantee deed, free and clear of all incumbrances, is not satisfied, unless the grantor had the absolute title. In *Gastry* vs. *Perrin*, 16 John. 267, it was indeed ruled, that a good and sufficient deed means only a deed to convey what title the grantor had. This last case even would be sufficient for this point in the cause, as the defendant had good title before he conveyed to Hawkins. Indeed it would seem to be trifling with the good sense of the law to hold that a warrantee deed means a deed that the grantor knows conveys nothing; and it would be giving judicial countenance to fraud, to rule that a man may discharge a legal obligation by giving a second deed of land that has already passed to another by the first. This bond, therefore, required a deed that should convey the land.

But it is further objected, that the replication which assigns the breach should have averred a readiness in the plaintiff to pay the money and execute the notes. In 1 Chit. Plead. 317, it is said, "on averring an excuse of performance by the plaintiff, he must state his readiness to perform the act and the particular circumstances that constitute such excuse." There can be no doubt that the giving the deed, and the paying the money, and executing the notes, were to be concurrent acts, since the absurdity of some old decisions on this subject was fully exploded in *Goodnow* vs. *Nims*, 4 T. Rep. 761, and that a party could not be forced to part with his money without at the same time having his deed; and that, therefore, after defendant had conveyed the land to another, the plaintiff was not bound to make a tender of the money or notes, upon the same principle that the plaintiff, in an action on a promise to marry on request, when the contract has been violated by the defendant's having married another, is not bound to aver a request that could not be granted. Yet the forms are, that the plaintiff " hath always from thence continued sole and unmarried, and hath been for and during all the time aforesaid,' and still is, *ready and willing* to marry the defendant."

To prevent the "*still is*" from being a wanton surplusage, it must be taken with the qualification, if it were morally possible, and thus showing a continuance of the original desire, and that the

CHITTENDEN,
January,
1835.
Stow
vs.
Stevens.

contract was not rescinded by mutual consent. So in the case at bar, the allegation against the defendant is, that he by selling the land deprived himself of the power to perform, which is equal to a refusal; and if the plaintiff was ready and willing on his part, the bond was forfeit. But if the plaintiff was neither ready nor willing, that is, was not able and did not wish to pay for the land, then it would have been no benefit to the plaintiff for the defendant to have kept it. There was no damage to him by the sale. It is true that in Sir Anthony Manpres' case, reported in Cro. Eliz. 479, and in Coke's Abridgement, 138, it was resolved, "that if a man seized of lands in fee covenant to enfeoff J. S. upon request, and after, he maketh a feoffment of the same to a stranger, in this case J. S. may have an action of covenant without request;" and the same report in Coke even says, "that when the enfeoffment was to be on a particular day, and he that was to enfeoff passes the land to another, the covenant is broken, although he purchase the land again before the day;" and as reported by Croke it is said, that the plaintiff was to make a surrender of his lease, and the defendant to make him a new lease, but the defendant had leased the land to a stranger. "The defendant being disabled to make a lease, the plaintiff needed not *tender* the surrender unto him." But the general principle that is to be gathered from the various authorities seems to be, that where the defendant has disabled himself from performing, the plaintiff, whether the condition or the act which he was to perform was precedent or concurrent, need not perform it, as the law requires no man to do a nugatory act; that is, he need not tender a performance, for that is properly an act, and to do it would require some useless trouble or expense; but to dispense with the averment of being ready and willing, would, we think, be a departure from all the forms, and not authorized by any authority that has been cited or recollected; and as it is not discreet to lessen any more than to enlarge the requirements of good pleading, without strong reasons, which do not exist in this case, as the merits are not involved in this point, we adjudge the replication to be insufficient.

Upon the common counts, the plaintiff claims to recover the money and other property paid in advance towards the land, at the time the bond was executed, on the ground that the act of deeding the lands to a stranger, by the defendant, was at the option of the plaintiff a rescinding of the contract. This is objected to because the contract was under seal, and therefore this claim is merged. But for this, it would be among the common cases of recovering

back the deposit, where the vendor was unable to perfect the title.
No authorities have been shown supporting such a distinction, and there seems to be no good reason why the form of the original contract can be of any importance after that contract has been rescinded or abrogated. In *Distrass* vs. ——, 1 Dal. 428, it was decided, that money had and received would lie to recover back the consideration, where there was no such land, as described in defendant's deed. In *Weaver* vs. *Bently*, 1 Cain. R. 47, which was an action of assumpsit to recover back the consideration paid on an agreement under seal, Judge Kent says—" the question will be, whether the defendant having failed to perform on his part, the plaintiff may disaffirm the contract and resort to his assumpsit to recover back what he had paid. We are of opinion, that he had his election either *to proceed on the covenant and recover* damages for the breach, or to disaffirm the contract and bring assumpsit to recover back what he had paid on a consideration which had failed." Whether the principle should be extended to the mere failure of performance, may admit of doubt; but in this case, where the defendant has done an unequivocal act of rescinding on his part, and the plaintiff is content so to regard it, and go only for his advances, that being the most favorable for the defendant, we think that the law as well as justice will permit it.

Judgment of county court, as to the demurrer, affirmed; and as to the issue in fact, reversed.