## ELLSWORTH and Others *v.* MACE and Others.

TRUST.— *Contract.— Construction of.*—A contract executed and acknowledged by A. and duly recorded, recited, that B. had made a proposition to A. to invest money in lands, the title thereof to be vested in A., who was to convey to B. half the profits after deducting the capital of A. invested and interest, at the end of five or ten years, as most agreeable to A., which capital and interest was to be reimbursed to A. by sale or appraisement of the land, the expense of locating or purchasing the lands to be divided equally between A. and B.; that A. had accepted said proposition, and, in pursuance of the agreement so made, B. had invested divers sums and delivered to A. the evidences of title, in a satisfactory manner, of certain lands described; and then the contract provided that, in consideration of the facts so recited and one dollar, received of B., A., binding his heirs and executors, covenanted and agreed with B. and his heirs and executors to hold said lands for the purpose mentioned in said recital for five years from the time the capital was invested (unless it should be mutually agreed by A. and B. to sell the same or any part thereof sooner); that whenever a certain sum with interest thereon from a certain date, with all sums paid for taxes, or improvements made by A. with B.'s consent, and interest thereon, should be reimbursed by public sale or otherwise, one half of the surplus profit over and above said money expended and interest thereon should be paid to B. his heirs and executors; that if said capital and interest should be reimbursed by partial sales, the residue of lands should remain in the hands of A. and B. until the expiration of said ten years, unless sooner sold or divided; that B. was empowered and authorized to take the care and agency of said lands and do whatever should be necessary to protect and preserve them from waste or injury, and to make such betterment and improvements as should be agreed to by A. in writing; that B. was authorized and empowered to sell, deed, and convey the lands in A.'s name or to bargain them by article or agreement, but that no sale should be obligatory without A.'s consent in writing. Afterwards, within five years, sundry parcels of the lands were sold and conveyed, from the proceeds of which A. was reimbursed for all the investments secured to him by the contract, leaving a portion of the lands undisposed of.

*Held,* that B. had under said contract an interest in said remaining lands as *cestui 'que trust,* which could be enforced against A.

APPEAL from the Tippecanoe Circuit Court.

FRAZER, J.—In June, 1850, Wheeler executed to Henry L. Ellsworth, deceased, the following contract, which was acknowledged and duly recorded :

" Whereas Henry L. Ellsworth, late of Hartford, Con-

necticut, now of Lafayette, Indiana, made to me, the under-
signed covenantor, Charles F. Wheeler, of Lafayette, County
of Tippecanoe, and State of Indiana, a proposition to invest
money in Western lands upon the following terms, viz.:
The title of the land purchased to be vested in myself, with
the obligation on my part to convey to said Henry half of
the profits, after deducting my capital invested and six per
cent. interest for the use of the money, at the end of five or
ten years, as most agreeable to myself, which capital and
interest was to be reimbursed to me by sale or appraisal of
the land, and the expenses of locating said lands or purchas-
ing the same was estimated at two and a half per cent.,
which sum of two and a half per cent, was to be divided
equally between myself and the said Henry; which propo-
sition was by me accepted, and in pursuance of said agreement
said Henry has invested divers sums and delivered to said
Wheeler the evidences of title in a satisfactory manner in
and to the following lots and parcels of land, viz.: Sections
thirty-four, (34), thirty-three, (33), thirty-two, (32), S. ½, S.
W. ¼, S. ½, S. E. ¼, S. E. ¼, twenty-nine, (29), Town. 26, 17
West; also Sections three, (3), four, (4), five, (5), eight, (8),
nine, (9), in Township twenty-five, containing in all five
thousand four hundred and forty acres, more or less, accord-
ing to Government survey; all which land lies in Indiana,
or was entered at the Crawfordsville land office:

"Now, therefore, in consideration of the above and one
dollar, received of the said Henry L., the said Charles F.
Wheeler does hereby covenant and agree with the said
Henry and his heirs and executors, and hereby bind my
heirs and executors to fulfil the same, that I will hold said
lands for the purpose above mentioned for the term of five
years from the time said capital was invested (unless it
should be mutually agreed by said Wheeler and said Henry
to sell the same or any part of the same sooner than five
years); and whenever the following sums, viz: three thou-
sand eight hundred and eighty dollars from 15th Septem-
ber, 1848, with interest on the same at seven per cent. per

annum, together with all the sums expended for taxes or improvements made by said Wheeler with consent of said Henry, and interest at seven per cent. on the same shall be reimbursed by public sale or otherwise, that one-half of the surplus profit over and above the said money expended and interest on the same shall be paid to said Henry, his heirs and executors; and if said capital and interest shall be reimbursed by partial sales, the residue of lands shall remain in the hands of said Wheeler and said Henry until the expiration of said ten years, unless sooner sold or divided. And said Henry is hereby fully empowered and authorized to take the care and agency of said lands and do whatever is necessary to protect and preserve the same from waste or injury, and to make such betterment and improvements as shall be agreed to by myself in writing; and the said Henry is further authorized and empowered to sell, deed and convey the same in my name, or to bargain the same by article or agreement; provided, no sale or agreement shall be obligatory without my consent in writing first had been obtained.

"In Witness Whereof, I have hereunto set my hand and seal, this 13th day of June, 1850.

"Charles F. Wheeler. [seal.]"

In 1850 and 1851, sundry parcels of the lands were sold and conveyed, realizing thereby a sum sufficient to reimburse Wheeler for the money specified in the contract, $3,880, with the interest, and all other investments secured to him by the contract; and leaving in addition thereto a surplus of thirteen hundred dollars, which he has held since April, 1851; and leaving also nearly four thousand acres of the lands still undisposed of, a portion of which, say one thousand five hundred and sixty acres, were afterwards conveyed by Wheeler to Daniel Mace, under such circumstances that it is not questioned here that the title in him remained liable to such equities in favor of Ellsworth as would subsist if it had remained in Wheeler. The complaint, showing the foregoing facts, was by the heirs at law

of Ellsworth against Mace and Wheeler to enforce those equities. The court below sustained a demurrer to it; and upon that ruling arises the only question.

We are to inquire then, whether Ellsworth had under the contract any equitable interest in the land which could have been enforced against Wheeler.

It is insisted by the appellees that *Ellsworth* v. *Pomeroy*, 26 Ind., 158, fully sustains the ruling of the court below. It seems to us, however, that that case can have no application to the question now under consideration. We regarded that as a close case. There the contract was one of agency; Ellsworth, the agent, to be compensated for his services, not by an interest in the land, but out of the proceeds of sales to be made by him within a certain period, and not afterwards, first reimbursing Pomeroy his investment. The agent had not made any sales, and was prevented by Pomeroy's death from discharging the service contemplated by the contract within the time limited; and it did not appear that if left at full liberty to sell, Ellsworth could, within the time fixed, have realized anything as profits to be divided. Here, however, the contract is altogether different. The formal relation of principal and agent is created, it is true, and some service is to be rendered by Ellsworth. He has already furnished much of the consideration which was sufficient to move Wheeler to enter into the contract which we have copied, and already mainly earned his compensation, which the agreement by Wheeler secures to him. And what is it? Wheeler covenants to "hold for five years (unless otherwise agreed) said lands" for certain specified purposes, viz.: first, to repay himself by the proceeds of sales to be made the money expended in the purchase, with interest thereon, and also all sums expended for taxes and for improvements made with Ellsworth's consent; and secondly, "one half of the surplus * * shall be paid to Ellsworth;" and when the first purpose, his own reimbursement as aforesaid, shall be accomplished, the lands "shall remain in the hands of both

parties" for a period of five years longer, "unless sooner sold or *divided.*" A small portion of the lands, sold within the period fixed, affords a fund as profits to be divided, and the lands now in question remain. It is difficult to conceive of a trust, plainly and explicitly declared, if this be not a trust, and we know not how the proposition can be set in a clearer light than appears by a statement of the case.

It is argued that Wheeler and Ellsworth were not partners. We are inclined to agree that they were not; but it does not follow that there was no trust, and that Ellsworth acquired no equity in the lands by the arrangement and events which occurred. A trust is an equitable interest in property distinct from its legal ownership. He who holds the legal title is trustee, and he for whose benefit it is held is the *cestui que trust.* In the language of SWAYNE, J., in *Seymour* v. *Freer*, 8 Wal. 202, a case involving facts slightly similar to this, but far less clearly indicating a trust—changing that language only by substituting the names of parties : "the object of the trust here was to sell the property, and after deducting from the proceeds the outlay, with interest and taxes, &c., to pay over to Ellsworth one half the residue." In this case, indeed, it was contemplated by the contract that the parties might divide the lands remaining after Wheeler was compensated for his investments. And yet in that case it was agreed by the whole court that there was no partnership, though a beneficial interest in Price as *cestui que trust,* long after the lapse of five years, when the lands had become immensely valuable, was held to exist, the agreement being express that the lands should all be sold in five years, Price to receive one half the profits *thus resulting* and nothing in any other manner; and it was admitted that it was doubtful whether the lands if sold within the five years would have realized the original investment with interest. We should hesitate before going so far. There is almost an infinite variety of modes by which a trust may be created besides a partnership where one partner holds the legal title of the partnership property.

It is further urged, that to enforce this trust would be inequitable, inasmuch as the service rendered by Ellsworth was trifling. This is not a forcible consideration in the present case. It could have been pertinently replied that the return of the capital invested by Wheeler with accumulated interest at seven per cent. per annum, a profit for the use of money which was at the time condemned by our law in cases of loan as exorbitant and oppressive, ought to silence him or those who stand in his place when they attempt such an argument. The plain fact is, that one party furnished the money, and the other supplied the care and judgment to invest it profitably, with an agreement to give to Wheeler a fair compensation for the use of his capital, and one half of the remainder of the property purchased besides, and to Ellsworth the other half. That the venture was immensely profitable must be deemed quite as much on account of the good judgment with which the lands were selected as because of the act of Wheeler in furnishing the capital. It was a fair business transaction, free from any taint of unconscionable advantage, and ought to be enforced.

Reversed, with costs, cause remanded, with directions to overrule the demurrer.

GREGORY, C. J., having been of counsel, did not sit in this cause.

*S. A. Huff* and *R. Jones*, for appellants.

*H. W. Chase, J. A. Wilstach*, and *E. H. Brackett*, for appellees.