# 𝔚heeling.

## James W. Cox *vs.* J. D. Cox *et al.*

### July Term, 1872.

1. A Party purchasing land who is cognizant of a previous purchase by another, takes the place of his vendor, and is liable to the same equity, and bound to do that which his vendor should have done under the contract with such other.

2. A case in which a plaintiff fails to establish a contract for the alleged purchase of land, where the negotiations were conducted by letters.

Bill brought December, 1869, in the circuit court of Brooke county. Decree dismissing bill December term, 1870.

The opinion of Judge Moore contains an ample statement of the merits of the controversy.

The plaintiff below, James W. Cox, appealed to this court.

*Parker* and *Scott* for appellant.
*Pendleton* for the appellees.

MOORE, J. James W. Cox filed, at the December term, 1869, in the circuit court of Brooke county, a bill in chancery against J. Decker Cox and George W. Caldwell, alleging that on the —— day of ————, 1869, complainant entered into a contract in writing with J. Decker Cox, by which the said J. Decker Cox agreed to sell to the complainant his interest in a certain tract of land, and that by said agreement complainant agreed to pay said J. Decker Cox two thousand dollars for said interest in said land, and that said J. Decker Cox agreed to accept the same therefor; that said J. Decker Cox violated his said agreement and refused to execute a deed to complainant for said interest, although complainant had always been ready and willing to pay him the price agreed on.

He further alleged that George W. Caldwell pretended to be the owner of said interest in said land, by virtue of a pretended deed from J. Decker Cox to him; which deed the plaintiff charged was void, because at the time it was signed, sealed and acknowledged by said J. Decker Cox, there was not inserted in the same the name of any grantee, but that a space was left blank, and that the name of said George W. Caldwell was inserted after the deed was signed, sealed and acknowledged, without the knowledge and consent of said J. Decker Cox; that said pretended deed was void and in fraud of plaintiff's rights; and he therefore prayed that the deed be declared null and void, that said J. Decker Cox be ordered and decreed to execute and deliver to plaintiff a good and sufficient deed for the said interest in the said land.

The bill concluded with a prayer for general relief.

J. Decker Cox was never brought into the suit as a party; the summons was not served on him, no order of publication was made to give him notice of the suit, and therefore there could be no decree against him, as prayed for. Caldwell was served with a copy of the summons, and answered the bill, denied the allegations thereof, and claimed to be a *bona fide* purchaser of the land from W. C. Barclay, agent of J. Decker Cox. Depositions were taken by both plaintiff and defendant, and exhibits filed. At the December term, 1870, for want of sufficient proof to sustain the bill, the same was dismissed at plaintiff's costs, by decree of said court. From that decree the plaintiff appealed.

The case as presented by the record is, therefore, to be considered only as between the plaintiff and the defendant, Caldwell. Although the allegations and prayer of the bill were not as specific as they might have been, yet if the plaintiff established his alleged contract and proved that defendant, Caldwell, subsequently purchased the said land, having notice of the plaintiff's contract therefor, Caldwell stood in the place of the vendor, liable to the same equity, and bound to do that which his vendor should have done under the contract with plaintiff; 1 Story's Eq. Jur., § 396; and under the prayer for general relief, the court could decree a conveyance of the land by Caldwell to plaintiff, upon payment of the purchase money.

To entitle himself to a decree in this cause, the plaintiff must show that there was a contract; not a mere treaty for a contract; not a mere option, but such as clearly demonstrated a proposal met by that sort of acceptance which made it no longer the act of one party, but of both ; for it is essential to the validity of a contract, that reciprocity of obligation should exist.

The alleged contract is attempted to be found in certain letters placed in evidence in the cause. J. D. Cox wrote to the plaintiff from New Orleans, June 1st, 1869, the following:

"Yours of May 22d came to hand yesterday; you say that you would like to buy my interest, and wish to know what I will take for it. I think two thousand dollars cash would not be too much for my interest. I am going to write to W. C. Barclay to sell at those figures, and to sell as soon as possible, because, as you say, everything is going to rack and will get worse as long as the farm is rented; so you can see Barclay about it, as I intend letting him attend to my business for me. * * * Answer immediately and give the news."

He again wrote to the plaintiff from Minden, July 14th, 1869, as follows :

"I received your letter this morning, also one from Chap. Barclay with deed enclosed (blank). The other deed he sent me. I had not sent it back for the reason that I expected to hear from you. I would rather you would have it than any one else, so I will sign the blank deed and send back to Chap. and tell him to let you have the refusal." * * * *

On the 2d day of June, 1869, the day following the date of the first letter written to plaintiff, J. D. Cox wrote to W. C. Barclay as follows :

"Yours of May 25th has been received, and I was glad to hear from you again. My opinion in regard to the farm is like yours. It is getting out of repair and will still run down as long as it is rented. I do not know and cannot tell you what time I can come home; and now I am going to leave the whole matter with you to sell as soon as you can. I think two thousand dollars cash not too much for my interest. I have an interest here in several matters, and it is impossible

43

for me to tell you when I can get off; and I wish you to do the best you can for me and I will be satisfied."

On the 30th June, 1869, Barclay wrote as follows to J. D. Cox:

"I wrote to you about two weeks ago and enclosed a deed for you to sign, conveying your interest in your father's farm to G. W. Caldwell. Since then your brother Jim has had two letters from you saying that you had left New Orleans for a few months, and he says, proposing to sell your interest to him. When I sent you the deed to sign, I did not know Jim wanted to buy you out; in fact, did not think he was able to buy. Of course he shall have the first chance at it, and if you have already signed and returned the deed sent you heretofore, Dr. Caldwell will convey it to Jim if he succeeds in raising the money. Thinking you had left New Orleans before receiving my last, I again enclose a deed for you to sign, and have left the name blank, so that if Jim cannot raise the money, I can fill it out with some other name who can pay for it. Jim cannot pay for it unless he can borrow the money, which is pretty hard to do just now. I would like for you to say how long I shall wait on him to raise the money before I offer to sell to any one else.

" If you have not received my last with deed enclosed, you can sign, stamp and acknowledge this before a Notary Public and return to me, and I will send you the money by express, or draft, as you may think best. State where and how you want it sent."

On the 14th July, 1869, the same day he wrote to plaintiff, he also wrote to said Barclay as follows, in answer to the foregoing letter : " Yours of June 30th, I received this morning with blank deed, and also received a letter from my brother James, stating he wished to buy my interest, and he would have the money in a week or two. I reckon by the time you receive this, he will have it, if not, you can sell immediately; give him a week's time. I send you back the deed signed as required, and you will send check for money on New York, made payable to John Chaffe & Bro., at New Orleans, and send it to them with instructions to sell it and place the proceeds to my credit and notify me at Minden, La.,"  *  *  *

Barclay upon the receipt of that letter and the blank deed, wrote as follows to the plaintiff: "That paper has arrived and ready for the money."

This is the extent of the correspondence developed by the record. It is plain that as far as this correspondence is developed no contract is made; it is simply a treaty for an agreement; the plaintiff expresses simply a wish to purchase, and asks what his brother J. D. Cox is willing to take. The reply is direct, two thousand dollars cash—and here ends without acceptance the negotiation between James W. Cox and J. D. Cox. J. D. Cox submitted the whole matter to Barclay for negotiation, with positive direction to sell immediately for cash, but authorized him to give plaintiff the refusal for one week.

There can be no doubt that J. D. Cox intended that Barclay should have full and absolute control of the matter, and that James W. Cox so understood it. J. D. Cox in his letter of July 14th, 1869 to Barclay used this plain language: "received a letter from my brother James, stating he wished to buy my interest and he would have the money in a week or two. I reckon by the time you receive this he will have it, if not, you can sell immediately; give him a week's time." Here is disclosed not merely the *intention* of J. D. Cox, but his instructions to his agent. He does not recognize an existing contract, but manifests a disposition to let the plaintiff have the land in preference to any other person, provided, nevertheless he paid cash within a week's time. Barclay gave him the week's time to raise the cash. It was therefore a condition precedent, that the cash should be produced, should be paid within that week's time. There was no obligation on the part of James W. Cox to take the land even if he did raise the money; it was clearly optional with him, and therefore no such reciprocity existed as would have enabled J. D. Cox to have sued for the money either at law or in equity. It seems to me, therefore, that no contract existed, but merely a treaty for one—a mere proposal. It is true the plaintiff was entitled to the last moment of the time agreed upon to accept of the proposition and to tender the cash, and had he accepted and made such tender, there can be no doubt he would have been entitled to specific execution of the con-

tract thus completed; an- ..l Caldwell purchased, after the proposition had been ac ...d and tender made by plaintiff, with notice of the pl/ ff's contract thus concluded, he, Caldwell, would then i. e been held in equity as a trustee for the benefit of plaintiff, and would be compelled to convey to plaintiff upon payment of the two thousand dollars.

But from the plaintiff's depositions, it is evident he did not produce the cash within the time designated. He contented himself with the promise of a check or draft made by third parties, which the agent could not have received as cash except at his own risk. The agent's instructions were positive that he should sell for cash; had he, therefore, taken anything but cash, or legal tender, it would have been in direct violation of the instructions of his principal. The plaintiff was guilty of laches that equity will not excuse. If he could have gotten the money upon the proposed draft, he should have done so, and not permitted the time to have elapsed without making the tender thereof. There was no contract until he accepted the proposition by making the tender, and as there was no contract, Caldwell cannot be held to convey. It has been argued that plaintiff was not bound to produce or make tender of the money after sale made to Caldwell. That would be true, had there been a contract existing, and not a mere treaty for one; but I apprehend that principle does not apply where the matter is a proposition without reciprocity of obligation. The plaintiff, at no time, could have been compelled to have taken the land; he was under no obligations which could be enforced against him either at law or in equity; there was no such mutuality in agreement as would justify the court in saying he was excused from making nder, because there was no contract until the tender was ade under the terms of the treaty.

Although I regret that the plaintiff did not obtain the land )r which he had undoubtedly a *pretium affectionis*, it having een the paternal homestead: and especially as the subsec- uent letters of his brother indicate regret that he had failed n his attempt to procure it; and especially as the vendee :ould well have afforded, in goodness of heart, to have granted a few hours longer to the plaintiff to have raised the money on the draft, before taking the conveyance to him-

self, yet, however strong my sympathy may be in that respect, I must adjudge that the bill is not sustained by the proof; and the court did not err in dismissing it. The decree should be affirmed, and, I regret, with costs.

The remaining members of the court concurred.

DECREE AFFIRMED.