# 78 BARLING et al. v. PETERS.

---

## HENRY A. BARLING et al.

*v.*

## WILLIAM H. PETERS, Receiver.

*Filed at Ottawa December 18, 1889.*

1. CONTRACT—*whether creating an interest in land.* A contract between A and B recited that B had purchased the undivided half of a section of land for $15,000, of which $6000 was paid and the residue was to be paid in twelve and eighteen months, and that A had advanced the $6000, and was to take the title subject to the deferred payments. It then provided that B should sell the land within one year, unless otherwise agreed, and make no charge for buying, selling, etc., and that A should advance the money necessary to pay taxes and deferred payments, and that upon a sale A should be reimbursed all moneys advanced by him, with interest, and the balance of the proceeds should be equally divided between the parties. The title to the land was taken to B, who gave his notes for the deferred payments: *Held,* that under the contract both parties acquired an interest in the land; that B was equally interested in the same after the advances made by A were repaid, with interest, and that he, or one succeeding to his interest, might call upon a court of equity to have the land sold and his interest thereby ascertained.

2. SAME— *supplemental contract giving either party power to sell.*
After the death of A, the trustees under his will made another contract
with B, reciting therein that A and B had agreed to purchase the other
undivided half of the land for their joint account and benefit, in all
respects on the same terms as in the first contract, and that the prop-
erty, owing to the death of A, had been conveyed to the trustees, by
whom the purchase money was advanced. This contract stated that
the last purchased land was held by the trustees upon the same terms
and conditions as in the prior contract, so far as the share and interest
of B in the profit or loss on the purchase was concerned, and further
provided, that in respect to both of said undivided halves the executors
or trustees under the will of A should have a right, at any time, or from
time to time, in their discretion, to sell the whole or any part or parts
of said premises for such price as they might deem expedient. No
sales were made by either of the parties, they regarding the land as a
profitable investment: *Held,* that as to both tracts or halves B was in-
terested as an owner, his interest being equal to that of A or his trustees
after the advances had been repaid, with interest.

3. Where, in such case, the executors or trustees of A agreed, in writ-
ing, upon the sale of the land, and after the payment of all advances
of the purchase price and for taxes, etc., to hold a sum not exceeding
$100,000 for and on account of a bank, as a creditor of B, and with his
assent, expressed in writing, and the bank failed, and the trustees re-
fused to make sale, it was *held,* that the receiver of the bank could
maintain a bill to compel the sale of the land, and have the interest of
B in the proceeds applied in payment of B's debt to the bank.

4. SAME—*construction—what may be considered.* In order to arrive at
a proper construction of a contract in relation to land purchased with
the money of one of several persons claiming to be interested therein,
and to determine the interest of each, all the facts and circumstances
connected with the transaction may be considered,—the object of the
purchase, the subsequent conduct of the parties, etc.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Circuit Court of Cook
county; the Hon. LORIN C. COLLINS, Judge, presiding.

On the 20th day of June, 1864, Edward Mott Robinson, of
New York, and Robert W. Hyman, entered into the following
agreement:

"WHEREAS, Robert W. Hyman has purchased the undivided
half of section twenty-one (21), township thirty-nine (T. 39)

north, range thirteen (13), east of the third principal meridian, in Cook county, Illinois, for the joint account of himself and Edward Mott Robinson, of the city of New York, for the sum of fifteen thousand ($15,000) dollars, upon the terms of six thousand ($6000) dollars cash down, and the residue in two equal installments of $4500 each, payable, respectively, at any time within twelve and eighteen months from the 26th day of April, 1864, according to the tenor of two certain notes of that date, secured by deed of trust on said premises, it being recited therein, and in said notes, that said Hyman shall have the privilege of paying each of them at the Merchants' Savings, Loan and Trust Company's bank in Chicago at any time before maturity, and that interest shall cease ten days after such payment into bank; and whereas, the said Edward Mott Robinson hath advanced to said Hyman the said sum of $6000 for said cash payment, and doth take the title to said lands subject to said deferred payments, and to make the same by way of advance, if it shall be necessary or expedient so to do hereafter, and to pay taxes thereon by way of advance:

"Now, therefore, this agreement witnesseth, and it is hereby mutually agreed, by and between the said Edward Mott Robinson and the said Robert W. Hyman, as follows, to-wit:

"*First*—Said Hyman shall sell said premises within one year from the date hereof, unless otherwise agreed between the parties hereto, and shall make no charge for buying, selling, or attending to the payment of taxes on the premises.

"*Second*—Said Robinson shall advance all such moneys as may be required to pay taxes and deferred payments on said lands before sale and conveyance, so far as may be necessary so to do.

"*Third*—Upon the sale of said premises the proceeds shall be distributed as follows: First, said Robinson shall be reimbursed all moneys advanced and to be advanced on said premises by him, with interest at the rate of seven per cent per annum; second, the balance of the proceeds of such sale

shall be equally divided between the respective parties hereto; third, an account of sales and of proceeds shall be made and rendered by said Hyman to said Robinson within ten days after such sale is made, if made by said Hyman.

"*Fourth*—And the said Robert W. Hyman, for himself, his heirs, executors, administrators and assigns, doth covenant and agree hereby, to and with the said Edward Mott Robinson, his heirs and assigns, that whenever sale is made of said premises, he, the said Robinson, or his heirs or assigns, shall in any event be reimbursed the full amount of all advances made and to be made on said lands, with interest thereon, at the rate of seven per cent per annum.

"In witness whereof, we, the said Edward Mott Robinson and the said R. W. Hyman, hereby bind ourselves, our heirs and assigns, to the foregoing agreement, and set our hands and seals.

"NEW YORK, *June 20, 1864.*

EDWARD MOTT ROBINSON, [Seal.]<br>R. W. HYMAN. [Seal.]"

On July 14, 1865, Robinson died in the city of New York, testate. By the terms of his will the land described in the contract was devised to Henry A. Barling, Abner H. Davis and Edward D. Mandell, trustees, to be held for certain purposes named in the will. On the 24th of September, 1867, the executors of the estate of Edward Mott Robinson, and R. W. Hyman, entered into the following contract:

"WHEREAS, Edward Mott Robinson (since deceased) and Robert W. Hyman, who were parties to the agreement of which the foregoing is a copy, did also agree that the remaining undivided half of section twenty-one (21), township thirty-nine (39), north, range thirteen (13), east of the third principal meridian, in Cook county, Illinois, should be purchased at the price of seventeen thousand and fifty ($17,050) dollars, for their joint account and benefit, in all respects, on the same

terms as specified in the foregoing instrument; and whereas, at the time such purchase was consummated, said Edward Mott. Robinson had deceased, and the title for said additional purchased interest of one-half of said section was at the time,—namely, about the 24th day of June, 1865,—conveyed to the undersigned, Henry A. Barling and Abner H. Davis, executors. of Edward Mott Robinson, by whom the purchase money paid. was advanced:

"Now, this memorandum witnesseth, in pursuance of the agreement made between said Hyman, and said Robinson in his lifetime, that the said last purchased undivided half of said section is held by the said Henry A. Barling and Abner H. Davis as executors, as aforesaid, upon like terms and conditions, so far as respects the share and interest of said Hyman. in the profit or loss to result from said purchase, as the said undivided half first purchased was held by said Edward Mott. Robinson under the said foregoing agreement of June 20, 1864; and said Hyman agrees, in like manner as he did in. respect to the first purchase, that said executors shall be reimbursed the amount of all advances that they have made or shall make for or in respect of said last purchased half, with. interest thereon at the rate of seven per cent per annum. And. it is further understood and agreed between the parties, that in respect of both said parcels or undivided halves purchased as aforesaid, the executors of or trustees under the last will and. testament of Edward Mott Robinson have a right, at any time, or from time to time, in their discretion, to sell the whole or any part or parts of said premises, for such price as they may deem expedient, and said Hyman shall be bound by the results. of such sale.

"It is further agreed, in respect of both said purchases, that. if, within one year from this date, there shall not have been enough received from sales of said premises to reimburse said Robinson's estate for his and its advances, with interest, the executors, in making up their eventual account for reimburse-

ment of the estate for its advances, and interest, shall be entitled to state the account of advances, computed with interest up to the end of a year from this date, the whole principal and interest drawing interest from that time, and so, from that time forth, state the account, with annual rests, adding in the accrued interest; provided always, that in case of a loss instead of a profit accruing on the purchase, such annual rests shall not be made, but simple interest, only, for the whole time, without rests, shall be charged.

"In witness whereof the said parties have hereunto set their hands and seals the 24th day of September, (1867,) eighteen hundred and sixty-seven.

HENRY B. BARLING, Exr.  [Seal.]

A. H. DAVIS, Exr.  [Seal.]

ROBERT W. HYMAN.  [Seal.]

WILLIAM E. WATSON, as to all."

Hyman had the entire charge of the property from the time it was purchased until he died, in May, 1885. He fenced it, and erected buildings upon it. The money to purchase the property and make the improvements was furnished by the executors. Hyman became indebted to the Exchange National Bank of Norfolk, Virginia, in the sum of $100,000, and for the purpose of securing the indebtedness he delivered the two following papers to the bank:

"NEW YORK, *October 1, 1883.*

"*Messrs. John B. Whitehead, President, and George M. Bain, Cashier, of the Exchange National Bank, Norfolk, Va.:*

"GENTLEMEN—As the executor of the estate of E. M. Robinson, I hold, with my co-executor, Abner H. Davis, title to six hundred and forty acres of land, being section 21, town of Cicero, Cook county, Illinois, under certain agreements made by and between Mr. Robinson, during his lifetime, and Mr. R. W. Hyman, and also between the executors and Mr. R. W. Hyman. Mr. Hyman is, upon a sale of said property, to re-

ceive one-half of the net profits, as provided in said agreements, arising from such sale.

"Mr. Hyman has requested of me, that whenever a sale is made of said property, after paying all taxes, liens and assessments, to hold for account of your bank such sum, not exceeding $100,000, as the firm of Hyman & Dancy, Norfolk, Va., or Dancy, Hyman & Co., New York, may be owing to your bank at the time of realizing from such sale. This I hereby agree to do, Mr. Hyman joining me in the same, with his approval.

"Very respectfully yours,

Henry A. Barling, *Exr.*

"I approve the above.—R. W. Hyman."

"New York, *July 5, 1884.*

"*Messrs. John B. Whitehead, President, and George M. Bain, Cashier, of the Exchange National Bank, Norfolk, Va.:*

"Gentlemen—As the executor of the estate of E. M. Robinson, I hold, with my co-executor, Abner H. Davis, a title to six hundred and forty acres of land, being section 21, town of Cicero, Cook county, Illinois. Under certain agreements made by and between Mr. Robinson, during his lifetime, and Mr. R. W. Hyman, and also between the executor and Mr. R. W. Hyman, Mr. Hyman is, upon the sale of said property, to receive one-half of the net profits, as provided in said agreements, arising from such sale. Mr. Hyman has requested me, that whenever a sale is made of said property, after paying all taxes, liens and assessments, to hold, for account of your bank, such sum, not exceeding $100,000, as may be found to be due to him.

"As Mr. R. W. Hyman, F. M. Hyman and George L. Arps, comprising the firms of Hyman & Dancy, Norfolk, Va., and Dancy, Hyman & Co., New York, now about to be dissolved, but are still owing said bank by their four several and joint notes for $25,000 each, payable twelve months after the 5th of July, 1884, without interest, this understanding is to apply

to the renewal of any part or the whole of said notes, from time to time, as may be agreed upon. This I hereby agree to, Mr. Hyman joining me in the same, with his approval.

"Very respectfully yours,

HENRY A. BARLING,

for self and A. H. DAVIS, *Exrs.*

"I hereby approve the above.—R. W. HYMAN."

In May, 1885, the Exchange National Bank failed, and appellee was appointed receiver, and he filed this bill, alleging that Hyman had an equitable interest in the lands described in the contracts; that the legal title was held by the executors of Robinson; that the administrator of the estate of Hyman had not paid the debt due the bank, and had taken no steps to sell the lands; that said section 21 is of the value and can now be sold for more than sufficient to satisfy all advances made by said Robinson and his said trustees, and also to pay the indebtedness due the bank, in the manner hereinabove set forth, out of the share so belonging to the estate of said Robert W. Hyman, deceased; that said trustees refuse to sell said lands in execution of the trusts reposed in them under the aforesaid agreements, and that said trustees claim the right to hold said lands, and not make sale thereof until they shall see fit so to do. The bill prays that the amount due to the receiver may be ascertained and decreed to be due; that the amount due to said executor, under and by virtue of the agreements with reference to the purchase of said lands, be ascertained; that the said lands be decreed to be sold, and the proceeds be distributed, according to the rights of the parties. The bill makes the executors of Robinson, and the beneficiaries under his will, the administrators of Robert W. Hyman, and his heirs-at-law, and various other persons, defendants to the bill.

The court rendered a decree in favor of complainant, in accordance with the prayer of the bill, and the decree was affirmed in the Appellate Court.

Messrs. PADDOCK, ALDIS & WRIGHT, for the appellants:

The executors of Robinson held the first incumbrance on Hyman's interest, and the bank the second. While the holder of the junior lien may redeem from the senior, he is not permitted, without the senior incumbrancer's consent, to maintain a bill foreclosing both liens. Wiltsie on Foreclosure, 256, sec. 116; 2 Jones on Mortgages, p. 427, secs. 1439, 1440; *Whittemore* v. *Sheill,* 14 App. Rep. 417.

The contracts show that Hyman at no time had an interest in the land, nor was he the beneficiary of any right, trust or power whereby he could require it to be sold by the owners. It follows that he could neither assign nor pledge any interest in the land. His function was to sell the land himself, and thereby earn the share in the profits. 1 Bates on Partnership, secs. 41, 43; *Stow* v. *Robinson,* 24 Ill. 597; *Stevens* v. *Faucet,* id. 483; *Porter* v. *Ewing,* id. 617; *Fawcett* v. *Osborne,* 32 id. 411; *Smith* v. *Gear,* 59 id. 386; *Burton* v. *Goodspeed,* 69 id. 237; *LeMoyne* v. *Quimby,* 70 id. 399; *Robbins* v. *Laswell,* 27 id. 365.

Messrs. SMITH & PENCE, and Mr. THEODORE S. GARNETT, for the appellee:

The agreement of June 20, 1864, between Hyman and Robinson, and the agreement of September 24, 1867, between Hyman and Robinson's executors, reciting that the land was purchased for their joint account and benefit, constituted Hyman and Robinson, and subsequently Hyman and Robinson's executors, partners in the transaction, with all the incidents of a co-partnership. *Nicoll* v. *Ogden,* 29 Ill. 323; *Nicoll* v. *Miller,* 37 id. 387; *Nicoll* v. *Mason,* 49 id. 358; *Simpson* v. *Leech,* 86 id. 286; *Faulds* v. *Yates,* 57 id. 416; *Morrill* v. *Colehour,* 82 id. 618; *Morse* v. *Richmond,* 97 id. 303; *Seymour* v. *Freer,* 8 Wall. 202; Story on Partnership, secs. 92, 93, and note on pages 150, 164.

Upon Hyman's death, the partnership between him and Robinson's executors was dissolved, and the latter became trustees

for Hyman's representatives and those claiming through him, and it became their duty to close up the partnership without delay. Story on Partnership, sec. 317; *Nelson* v. *Hayner,* 66 Ill. 487; *McKean* v. *Vick,* 108 id. 373; *Railsback* v. *Lovejoy,* 116 id. 442; *Mauck* v. *Mauck,* 54 id. 281.

A partner may transfer or pledge his interest. Lindley on Partnership, (ed. of 1888,) 364; Story on Partnership, secs. 260, 263; *Newhall* v. *Buckingham,* 14 Ill. 405; *Bank* v. *Railway Co.* 11 Wall. 624; *Strong* v. *Clausen,* 10 Ill. 346.

The bank does not stand as a junior incumbrancer.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It is insisted on behalf of appellants, that the contracts, properly construed, show that Robert W. Hyman at no time had an interest in the land; nor was he the beneficiary of any right, trust or power whereby he could "require" it to be sold by the owners; that he could neither assign nor pledge any interest in the land, nor could he vest another party with a right to require a sale,—his function was to sell the land himself, and thereby earn the share in the profits. We have given the able argument of appellants' counsel a careful consideration, but we have not been able to arrive at the conclusion that Hyman had no interest in the premises involved in this litigation.

In order to arrive at a correct construction of the two contracts,—one executed by Edward Mott Robinson and Robert W. Hyman, and the other by the executors of the estate of Robinson, and Hyman,—and determine the rights of Hyman in the premises, under these contracts, it is proper to take into consideration the manner in which the lands were bought, the object in view in making the purchase, and also the manner in which the lands were held and treated after the purchase, by the respective parties.

The first half-section was purchased by Hyman and deeded by the grantor directly to him. He gave his own notes and a

deed of trust on the premises to secure two-thirds of the pur-
chase money. If he had no interest in the lands, and was to
have no legal or equitable interest therein, why were the lands
deeded directly to him? For what reason did he execute his
own notes in payment of the purchase money? If the under-
standing between the parties was that Robinson was to be the
absolute owner of the lands, and that Hyman was merely to
act as agent, and earn a share in the profits by making sales,
doubtless the lands would have been conveyed directly to Rob-
inson, and the contract which they subsequently executed
would have stated in plain terms that the lands were purchased
by Robinson as his own property, and that Hyman was to sell
as an agent, for a commission. But we find no such language
in the contract. On the other hand, the very first sentence of
the contract declares that Hyman has purchased the lands for
the joint account of himself and Edward Mott Robinson. The
first clause of the contract declares that Hyman shall sell
said premises within one year, unless otherwise agreed by the
parties to the contract, and shall make no charge for buying,
selling, or attending to the payment of taxes. The third pro-
vision of the contract provides, that upon a sale of the premises
Robinson shall be reimbursed all moneys advanced, with in-
terest, and the balance of the proceeds of sale shall be equally
divided between the parties. What the legal *status* of Hyman
and Robinson may be called or denominated under the con-
tract, is a question of no great moment. The real question
is, what were the rights of the two parties, under the contract,
in the lands? Were they each interested in the premises as
joint owners, or otherwise? If the lands were purchased on
joint account, as declared in the contract, they were bought
for the benefit of each, and each party had an interest therein.
Upon a sale of the lands by Hyman, if the proceeds arising
from the sale were to be equally divided between the parties
after the advances of Robinson had been repaid, as declared
by the contract, then the interest of the parties in the lands,

subject to the advances, were equal. The fact that the lands were conveyed to Robinson, and the rights of Hyman vested in the two contracts, does not, in equity, make any difference. In a court of equity, the substance of the transaction, and not the form, is to be regarded in the determination of the rights of the parties. The legal title to the lands was placed in Robinson, but he held it in trust for the purposes specified in the two contracts.

*Seymour* v. *Freer,* 8 Wall. 211, is a case in its facts quite similar to the case under consideration. In the case cited, a contract was made between Price and Seymour which provided that Price should buy lands in certain States, to an amount not exceeding $5000; that the title to the lands should be taken in the name of Seymour, he furnishing the money to pay for the lands; that the lands should be sold within five years, and from the profits one-half should be paid to Price, and be in full for his services and expenses. The court held that the contracting parties held a joint interest in the property, and in passing upon the rights of the parties under the contract, among other things the court said: "It is proper here to consider the legal and equitable relations of the parties, arising out of the contract. We think Seymour took the legal title in trust for the purposes specified. A trust is where there are rights, titles and interests in property distinct from the legal ownership. In such case the legal title, in the eye of the law, carries with it, to the holder, absolute dominion; but behind it lie beneficial rights and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and constitute an equity, which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked. Interest in real estate, purely contingent, may be made the subjects of contract and equitable cognizance, as between the proper parties. The object of the trust here was to sell the property within the time limited, and after deducting from the proceeds the outlay,

with interest and taxes, to pay over to Price one-half of the residue. To this extent Seymour was a trustee, and Price the *cestui que trust.* They had a joint interest in the property. Seymour held the legal title, but the rights of Price were as valid, in equity, as those of Seymour were at law."

If the parties in the case cited had a joint interest in the property purchased, as held by the Supreme Court of the United States, upon the same principle it may be held here that the two contracting parties had a joint interest in the property embraced in the two contracts involved in this case.

The theory that Hyman was to earn a share in the profits by making sales of the premises, is not found in the contract. Indeed, in the contract executed by the executors after the second half-section was purchased, the executors are authorized to sell any part or all of the entire section of land, at such time and for such price as they may think proper. Both of the contracting parties were thus authorized to sell if they saw proper; but it is apparent, from the evidence, and conduct of the parties, that neither desired to sell. Hyman advanced the price of the land from year to year, seemingly for the purpose of keeping it from being sold, and the executors saw that the land was good property to hold, and made no effort whatever to sell. Thus the conduct of both parties in the management of the land would seem to indicate that there was no intent or understanding that Hyman should go on and sell out the lands, and thus earn a share in the profits, as contended by counsel for appellants. We think, therefore, it is plain, from the provisions of the two contracts and from the facts surrounding the transaction, that Hyman had more than a mere interest in the profits—that he had an equitable interest in the lands which, in equity, was equal to the interest of Robinson, after Robinson had received his advances and the interest thereon. Suppose Hyman had, before his death, paid the executors of the estate of Robinson all advances made on account of the lands, and the interest thereon. Could it then

be held, in a court of equity, that he had no interest in the premises? If Hyman had pursued the course indicated, and repaid all advances and interest, we do not think a court of equity would hesitate, on a proper application, to decree that he had an interest in the premises, and award that interest to him.

*Stow* v. *Robinson,* 24 Ill. 532, has been cited as an authority to sustain appellants' view; but the facts of that case are so different from the facts presented by this record that we do not regard the case as one which can control the decision of this case. There, Robinson owned a block of land, which Rafferty agreed to subdivide and sell, and for his services in selling he was to receive a share of the profits. Under the facts of that case it was held—and, we think, properly—that Rafferty had no vested interest in the lands. But the land in that case was not purchased on joint account, as is the case here. It was not intended that he should have an interest in the land, but that he should sell, and for his services in that capacity he should receive certain profits. There is such a marked distinction between the two cases that the one can not control the other.

Other cases of a similar character have been cited, but we have not the time, and it would serve no useful purpose, to refer to each case in detail; but upon an examination they will be found to differ so materially in their facts from the present case that they can not control.

It is said that those owning the lands under the will of Robinson do not desire to sell, and it is argued that it is a great hardship to compel a sale of their interest in order to satisfy a claim against the estate of Hyman. There is a seeming hardship in this regard. But the executors of the estate of Robinson, at the request of Hyman, agreed, in writing, upon the sale of the premises, after the payment of all taxes, liens and assessments, to hold for account of the Exchange National Bank of Norfolk, Virginia, such sum of money, not exceeding

$100,000, as may be due from certain firms of which Hyman was a member, to pay and discharge the indebtedness due the bank. Since this contract was executed by the executors of the estate of Robinson, Hyman has died, and those representing the bank invoke the aid of a court of equity for an accounting, and for a sale of the premises, to subject the interest of Hyman to the payment of its debt due, under the agreement executed both by Hyman and the executors. After Hyman's death the executors of Robinson's estate were the only persons authorized to sell the premises. They declined to do so, and the representatives of the bank, standing in the shoes of Hyman in so far as this claim is concerned, had no remedy except to appeal to a court of equity. They held an equitable lien on Hyman's interest in the premises to the extent of their debt, not exceeding $100,000, and, under the agreements and facts as disclosed, we think the decree was proper. The rights of the executors, and those claiming under the will of Robinson, are fully guarded and protected by the decree, and, under all the evidence, we do not think they have any just cause of complaint.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*