# CHARLESTON.

## MANKIN *v.* JONES.

Submitted September 4, 1909. Decided December 20, 1910.

1. FRAUDS, STATUTE OF—*Promise to Pay Debt of Another.*
    An oral promise to pay the debt of another, when supported by a new consideration beneficial to the promisor, is not within the statute of frauds.

68 W. Va.

2. SAME.

If J. owes G. and G. owes M., and J. orally promises to pay M. the debt which G. owes him, and M. thereupon releases G., such promise is not within the statute of frauds.

3. VENDOR AND PURCHASER—*Recovery of Money Paid—Assumpsit.*

Money paid on a void contract for the purchase of land may be recovered in *assumpsit.*

4. FRAUDS, STATUTE OF—*Trust—Partnership—Contract for Sale of Land.*

M. and J. orally agree to buy certain land for the purpose of speculation, the land to be sold and the profits divided whenever the price of $35 an acre, or more, can be obtained, M. to spend his time and use his judgment in making the purchases, and J. to furnish the purchase money and hold the legal title; *held:*

I. Such agreement is not a contract for the sale of land, and consequently is not within the statute of frauds.

II. Neither does it constitute M. and J. partners in the land, but it creates a constructive trust in favor of M. for the purpose of a sale of the land and a division of the profits.

5. SPECIFIC PERFORMANCE—*Breach of Contract—Remedies of Parties.*

If M. procures a *bona fide* purchaser for the land at $40 an acre and advises J. of it, and he thereupon refuses to sell, and informs M. that he intends to keep the land, M. may elect either to sue in equity for specific execution of the contract, or to bring an action at law for its breach.

6. ASSUMPSIT, ACTION OF—*Breach of Contract—Recovery of Damages.*

Damages for the breach of a special contract unexecuted are not recoverable under the common counts in *assumpsit.*

7. PLEADING—*Declaration—Amendment—New Cause.*

Plaintiff cannot amend his declaration, over the objection of defendant, so as to include a cause of action not contemplated by his original declaration.

8. SAME.

Amending a declaration in *assumpsit*, embracing the common counts only, by adding a special count applicable to a particular item in the bill of particulars, which is also provable under some one of the common counts, is not a departure from the original cause of action, if the amount of damages claimed in both the original and the amended declarations is the same.

Error to Circuit Court, Raleigh County.

68 W. Va.

Action by Crockett Mankin against G. W. Jones. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*McGinnis & Halcher* and *W. R. Thompson,* for plaintiff in error.

*M. F. Matheny, File & File,* and *Sanders & Crockett,* for defendant in error.

WILLIAMS, JUDGE:

Plaintiff recovered a judgment in *assumpsit* against defendant in the circuit court of Raleigh county on the 23rd of February, 1909, for $8,944.35, and defendant sued out this 'writ of error. The case was once before in this Court and is reported in 63 W. Va. 373. It was then reversed and remanded for a new trial, because it did not appear that there was any consideration to support Jones' promise to pay Gibson's debt to plaintiff, and the promise, not being in writing and signed by Jones, was held to be within the statute of frauds. On the first trial the declaration contained only the common counts; but before the new trial 'was had plaintiff amended his declaration, and added a special count which sets forth in detail the circumstances attending the making of the promise by Jones to plaintiff, and alleges that the consideration for the promise was the payment of a debt which Jones himself at that time owed to one Gibson. The case was again tried by a jury upon the general issue. The testimony is very conflicting, but concerning the weight of conflicting testimony the jury are the sole judges, and we must, therefore, accept their finding upon the disputed facts. The special count relates to an item of $4,225.00, and interest, in plaintiff's bill of particulars, and originated in a sale of land by plaintiff to Gibson, the consideration for 'which was about $8,000.00, and was to be paid in cash on the delivery of the deeds. When plaintiff and Gibson met for the purpose of completing the transaction, Gibson found that he did not have cash enough to pay for the land in full, and he called in Mr. Jones who, according to plaintiff's evidence, said he would pay the balance, $4,225.00, due to plaintiff. Thereupon plaintiff delivered the deeds of conveyance for the land to Gibson, and, as he says, relied upon Jones' oral promise,

and released Gibson. Gibson testified that Jones at that time owed him $8,000.00. It is well established that where there is a new consideration to support the promise of one person to pay the debt of another, such promise need not be in writing in order to be binding. Such a promise is not within the statute of frauds. By paying Gibson's debt to plaintiff, Jones was paying, *pro tanto,* his own obligation to Gibson. This was a new consideration certainly sufficient to .support the promise. This identical point arose in *Hooper* v. *Hooper,* 32 W. Va. 526, and it was there held that the promissor was thus only paying his own debt, which is true. See also *Howell* v. *Harvey,* 65 W. Va. 310, and cases cited in the opinion.

It is insisted that Jones' promise was to pay the debt in lands, and not in money, and that therefore *assumpsit* does not lie to recover the money. But suppose he did promise to pay in land at an agreed price, and afterwards refused to do so, plaintiff could sue for the money. *Burr* v. *Brown,* 5 W. Va. 241; *Butcher* v. *Carlile,* 12 Grat. 250; *Turpin* v. *Sledd's Exor.,* 23 Grat. 238; *Stewart* v. *Donnelly,* 4 Yerg. (Tenn.) 177; *Gilbert* v. *Danforth,* 2 Selden (N. Y.) 585; *Minnick* v. *Williams,* 77 Va. 578.

There is another theory, consistent with reason, authority and the proof in the case, on which *assumpsit* can be maintained for this item of $4,225.00, which is, that Jones' promise to convey certain lands to plaintiff was an oral contract for the sale of land, fully paid for, but not enforcible in equity, because possession had not been delivered. On refusing to execute such a contract plaintiff has a right of action for money had and received for his use. Plaintiff had fully paid defendant for the land by delivering his deeds to Gibson and releasing him. There was nothing else for plaintiff to do to entitle him to the conveyance from Jones.

"To sustain the count for money received by the defendant for the use of the plaintiff, it is only necessary to show that the defendant has obtained possession of money, or received something as money which *ex aequo et bono,* he ought to refund." 2 Enc. Pl. & Pr. 1016, and the numerous cases cited in the notes. *Thompson* v. *Thompson,* 5 W. Va. 190; *Jackson* v. *Hough,* 38 W. Va. 236; *Martin* v. *Martin,* 5 Bush (Ky.) 47; *Mannen* v. *Bradbury,* 81 Ky. 153.

"The action of *assumpsit* is a liberal and equitable one. It is applicable to almost every case where money has been received 'which in equity and good conscience ought to be refunded." *Thompson* v. *Thompson*, 5 W. Va. 190. On the failure of the vendor to convey, the vendee can sue in *assumpsit* and recover the money which he has paid, even though the contract be not enforcible in equity. *Bier* v. *Smith*, 25 W. Va. 830; *Lipscomb* v. *Lipscomb*, 66 W. Va. 55.

The other controverted item in plaintiff's bill of particulars filed with his amended declaration is an item of $4,102.50, and is described as being $7.50 per acre on 547 acres of land purchased by Mankin for Jones. This item was not included in plaintiff's bill of particulars on the first trial; neither is it described by a special count in the amended declaration. The proof of this item, as well as the others, depends upon the conflicting testimony of witnesses. Plaintiff's evidence proves that he and defendant orally agreed that plaintiff should purchase this 547 acres of land at the price of $25 an acre, for the purpose of re-selling for a profit; that defendant was to pay for it and take title to himself; that they were to hold the lands until the price of $35 an acre could be obtained and that they were then to sell, and divide the profits equally. Plaintiff further proves that the lands were bought pursuant to that agreement and the title conveyed to defendant; that not long thereafter plaintiff found a purchaser who was willing to pay $40 per acre, and that he communicated this fact to defendant; that, in reply defendant wrote plaintiff as follows: "Your son just handed me your letter—I had just 'written one to mail you which I herewith enclose—Will be glad to see you if over this way— Your offer of 40.00 is certainly very tempting—I am almost too much surprised at such an offer to advise you on so short notice—This is certainly a fine offer and you might keep many years before getting a better offer." Plaintiff further testified that within a week after the date of this letter he saw defendant, and urged him to accept the offer of $40 per acre; that he refused to accept it, and replied to plaintiff "that he had decided to keep the property." Counsel for plaintiff in error insist that, this evidence, if true, establishes a partnership in the lands between the parties, and that, there having been no settlement of the partnership transaction, a suit could not be

maintained by one partner against the other. But we are clearly of the opinion that, whatever may be the true relation between the parties, growing out of this contract, it is certainly not one of partnership. The relation was either that of trustee and *cestui que trust,* or of principal and agent; and in either case plaintiff could sue in *assumpsit.* However, we are of the opinion that the relation of trustee and *cestui que trust* is established, and that Jones held the legal title in trust for himself and plaintiff, for the purpose of sale for the mutual benefit of both, whenever the price of $35 an acre, or more, could be realized, defendant's interest being an equal share in the profits to be derived. We have recently held in *Floyd* v. *Duffy,* 68 W. Va., that an agreement, similar in nature to this one, established a trust relation, and that, although not in writing, it does not fall within the statute of frauds, if entered into at the time of, or prior to, the taking of title to one of the parties. See also *Currence* v. *Ward,* 43 W. Va. 367, and *Ludwick* v. *Johnson,* 67 W. Va. 499 (68 S. E. 117). Mankin's services were the equivalent of money.

In *Seymour* v. *Freer,* 8 Wall. 202, a contract, very like the one we are now considering, except that it was in writing while this one is not, was involved. Seymour and one Price agreed that Seymour should furnish $5,000; that Price should invest it in western lands and have title thereto conveyed to Seymour for the purpose of speculation. Price was to devote his time and judgment to making selections of the lands, but was to be at no other expense. The land was to be sold within five years thereafter; and, after deducting the price paid and seven per centum interest thereon, together with taxes and other expenses which were to be paid by Seymour, the net profits were to be equally divided between them. Price was to have no other remuneration for his services. The lands in that case were held by Seymour and his heirs for many years before any sale was made. In the meantime both Seymour and Price had died. The contract was made in 1835, and in 1855-6 one High, as agent for Seymour's heirs, sold portions of the land at $69,200, thus realizing an enormous profit on the original investment. Freer, as administrator of Price, brought a suit in equity against Seymour's representatives for an accounting, and for the recovery of Price's share in the net profits. The Supreme Court

of the United States held, by a divided court, that the agreement established a trust relation. Justice Field and two other justices dissented, but all the justices concurred in the opinion that there was no partnership in the land, or its proceeds. Justice Field, who wrote the dissenting opinion, took the view that the agreement established the relation of principal and agent; that the measure of Price's compensation for his services was one-half of the net profits; and that it was a mere personal contract on which an action at law might have been maintained for its breach, had it been brought within time; but that, inasmuch as the contract fixed the time of five years within which the lands were to be sold, and not having been sold within that time, Price's rights were at an end.

The supreme court of Illinois, in the case of *Barling* v. *Peters,* 131 Ill. 78, and the supreme court of Indiana, in *Ellsworth* v. *Mace,* 33 Ind. 73, followed the *Seymour* v. *Freer Case* in construing similar contracts, and held that a trust relation was thereby created. That such a contract does not create a partnership is further borne out by the following authorities: *Bowyer* v. *Anderson,* 2 Leigh 550; *Snodiker* v. *Applegate,* 24 W. Va. 411; *Bruce* v. *Hastings,* 41 Vt. 380; *Gottschalk* v. *Smith,* 54 Ill. App. 341, affirmed in 156 Ill. 377.

Assuming, then, that a trust relation existed, plaintiff has proved that he had performed fully his part of the agreement. But Jones had broken it and has repudiated the trust. This gives Mankin the right either to compel a performance of the contract in equity, or to sue at law to recover damages for its breach. The fact that the agreement gives Mankin an equitable interest in the profits to be derived from a sale of the land does not preclude him from suing at law for its breach. It is a lawful contract which a court of law recognizes as creating substantial rights, although it cannot specifically enforce it. It was the opinion of all the justices, expressed in *Seymour* v. *Freer, supra,* that an action at law would lie in favor of Price against Seymour for a breach of the contract between them. This is obiter, it is true, but it comes from a very high source, and is none the less a correct statement of the law, because it happens not to be a question decided in that case. Mr. Justice Field, in his dissenting opinion, at page 227 (8 Wall. 202.), says: "Undoubtedly Price could have maintained an action at

law against the representatives of Seymour had a sale of the property been refused within the five years specified in the agreement, and recovered, as damages, a sum equal to one-half the difference between the value of the property and the amount of its cost, interest thereon, and expenses."

In the present case it does not appear that Jones accepted the trust and administered it for a while, and then refused to complete it. But it appears from Mankin's evidence that he broke the agreement soon after he acquired title to the trust subject, and before he had performed a single act in his capacity as trustee. In fact, that he denied and repudiated the trust. No accounting was, therefore, necessary, and Mankin had the right to elect which remedy he would pursue, whether a suit in equity to compel performance, or an action at law for the breach. The rights, under such a contract, are analogous to those growing out of a contract for the sale of land which, although in writing, cannot be enforced in a court of law, still it is recognized by courts of law, as a binding obligation, for the purpose of giving a right of action for its breach. Actions at law for the breach of contracts for sale of land are common. 3 Sedg. on Dam., section 1006, and cases cited in note; *Wilson* v. *Spencer,* 11 Leigh 261; *Thompson's Exor.* v. *Guthrie's Exor.,* 9 Leigh 101. But in equity such contracts create an equitable estate in the purchaser.

The parol contract between Mankin and Jones is a binding contract, not being a contract for the sale of land, and, therefore, not within the statute of frauds, according to our recent decision in *Floyd* v. *Duffy,* 68 W. Va. 339; *Ludwick* v. *Johnson,* 67 W. Va. 499 (68 S. E. 112); *Same* v. *Same,* 58 W. Va. 464; *Currence* v. *Ward,* 43 W. Va. 367. Mankin's evidence proves that he had done all that he was required to do under the agreement; and when he found a purchaser who was willing to buy the land at $40 an acre Jones refused to sell, and replied to Mankin that he had decided to keep the land. This constituted a breach, entitling Mankin to damages. Judge BRANNON and I are of opinion that, on Jones' refusal to sell the land and his statement to Mankin that he had decided to keep it, gave Mankin the right to elect to treat him as the purchaser at the price of $40 an acre, and a right to sue for his share of the proceeds, as for money had and received by Jones for his use, in which

case Mankin's share of the profits would be recoverable under the common count in the declaration. "An action for money had and received may be maintained for a share of the profits of a single joint enterprise, under an agreement that such profits should be equally divided, where the transaction is completed and the profits received by the defendant." *Gottschalk* v. *Smith,* 156 Ill. 377. *McKinnon* v. *Vollmar,* 75 Wis. 82 (17 Am. St. Rep. 78); *Wright* v. *Dickinson,* 67 Mich. 580; *Stow* v. *Stevens,* 7 Vt. 27; *Smith* v. *Lamb,* 26 Ill. 397.

Money due under a special contract may be recovered on a common count in *assumpsit* whenever it appears that plaintiff has entirely performed his part of the agreement, and nothing remains to be done except the payment of money. 1 Chitty on Pleadings, (16th American Edition) 359; 2 Tucker's Com. 131; *Bruce* v. *Hastings,* 41 Vt. 380. But a majority of the Court do not accept this view. I am also of the opinion that Mankin can elect to treat the contract as broken by Jones, and sue him for its breach; and this is the opinion of a majority of the Court. In this view of the case, the action so far as it relates to the item in the bill of particulars for $7.50 an acre on 547 acres of land, appears from the plaintiff's evidence to be for damages for the breach of a special contract which is not declared on, and not provable under any of the common counts. There is, consequently, a variance between the pleading and the proof for which the court should have sustained defendant's motion to set aside the verdict and grant him a new trial. Evidence, without proper pleading, will not support a verdict; the *allegata* and *probata* must correspond. *Berkely* v. *Cook,* 3 Call 378; *B. & O. R. R. Co.* v. *Skeels,* 3 W. Va. 556; *Loomis* v. *Jackson,* 6 W. Va. 613; *Hutchinson* v. *Parkersburg,* 25 W. Va. 226. But plaintiff is entitled to amend his declaration to make it conform to his proof, *Hutchinson* v. *Parkersburg, supra,* provided, however, there is no objection to such amendment as constituting a departure from the original cause of action. *Hanson* v. *Blake,* 63 W. Va. 560. But if objection should be made to amending the declaration in order to include the item now under consideration, it cannot be so amended, because it would be a departure from the original cause of action. It constitutes an additional claim, and would introduce into the case a new substantive cause of action. *Snyder* v. *Harper,* 24 W. Va.

206, and cases cited in the opinion by Judge GREEN, pages 211-212.

There is error in plaintiff's instruction No. 2 which calls for a reversal in any view of the case. It fails to submit to the jury the question of fact whether, or not, there was an agreement between Mankin and Jones whereby they were to divide the profits of the land above $25 an acre, whenever it could be sold for $35, or more, per acre. It asumes, as matter of law, that if the jury find certain other facts, submitted to them by the instruction to be true, they should find that Jones is liable to Mankin in the sum of $7.50 an acre. Mankin's compensation, or share in the profits, was a controverted fact, and should have been submitted to the jury. Jones testified that Mankin was not to get any part of the proceeds from the land.

Defendant's instructions Nos. 1 and 3 are bad, and were properly refused. His No. 4 does not appear in the record. His No. 2 is bad, and it was error to give it, because it states the law to be that Jones' promise to pay Gibson's debt to Mankin, in order to be binding, must be in writing and signed by him, or his agent. This is not the law, as we have before said, if there is a new consideration to support Jones' promise. His No. 5 is bad for the same reason, and for the additional reason that, notwithstanding Jones' promise was made in the alternative, either to pay Mankin the $4,225, or to convey to him the Trump land, still Mankin had paid Jones' debt to Gibson, *pro tanto,* by turning over his deeds to Gibson and releasing him from the payment of the purchase money, he had a right to recover against Jones, on his refusal to convey the Trump land, for money paid for the use of Jones at his request. The instruction tells the jury that such an oral promise is void.

We see no error in defendant's instruction No. 6.

Because of the errors herein pointed out, the judgment of the lower court will be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and Remanded.*

BRANNON, JUDGE:

I suppose the instruction must reverse the case. My position on the question whether there could be a recovery by Mankin on the common count for the land purchased has been and is,

that when Jones refused to accept the offer of $40 per acre for the land and refused to convey, and keep the land himself, if such be the facts, the trust was at an end by Jones' election to so treat it, and when he elected to keep the land, Mankin could treat him as a purchaser, and the case is just as it would be had Jones accepted the offer and conveyed to a stranger as purchaser. In such case the conveyance would close the trust, and there would be no longer any open trust cognizable only in equity, but a money debt due from Jones to Mankin, recoverable as money had and received under the common count. Jones cannot say that there is any trust longer open for enforcement in equity. He has made himself the purchaser. It has become simply a money debt. But if that theory is not sound, and we are to treat the trust as not closed, and cannot treat Jones as purchaser, then, as Judge POFFENBARGER and I think, there cannot be recovery on a special count, because the trust is yet open and unexecuted, it yet remains executory, and upon well established principles is proper for a court of equity only. I would think such special count a departure from the case made by the original declaration.

POFFENBARGER, JUDGE, *(concurring)*:

Having found no authority, giving an action at law for a mere breach of a trust, securing only an equitable interest in land,' such as the evidence here, viewed in one of its aspects, discloses; and regarding the legal remedy as being wholly inconsistent with the rights of the parties, considered as trustee and *cestui que trust;* I am constrained to dissent from so much of the opinion and decision as declare the legal remedy appropriate and applicable. In my opinion, *Seymour* v. *Freer,* 8 Wall. 202, asserts no such doctrine. As the land in that case had been converted into money by the execution of the trust to the extent of sale, so that the legal and equitable titles of the plaintiff might be regarded as having reunited, the majority of the court could consistently say the plaintiff could have sued at law for the money. As Mr. Justice Field denied the existence of any trust relation or equitable title, regarding the contract as one for services only, of course, he could well say an action at law was appropriate. In that view of the case, it was the only remedy.

If there is an equitable title in the plaintiff and nothing more, the law does not recognize it. In the eye of the common law, it is nothing. It exists only in the contemplation of a court of equity. Breach of the trust, therefore, deprives the plaintiff of no right, known to a court of law or recognized by it. Legally no injury or wrong has been done.

Allowance of the legal remedy alters the contract the parties made. Indeed, it virtually makes a new contract for the parties. Jones never promised to pay a commission of $7.50 per acre, under any circumstances, out of his own pocket. Mankin was to receive his money out of the proceeds of the land, not from Jones personally. Limitation of his redress to the equity court preserves, continues and executes this contract, without extending it—gives him exactly what he bargained for and no more. Allowance of the legal remedy treats the obligation as a personal one in all respects. It enables Mankin to sue Jones precisely as if he had promised to pay the money the former seeks, out of his own pocket and at all hazards. Even courts of equity deny the power to make contracts for parties where justice and good conscience seem to demand it.

Nor do I think Jones can be treated in a court of law as having purchased the interest of the plaintiff in the land. The same general principle applies here. In the view of a court of law, Jones takes nothing from him in withholding or refusing to yield that interest. It is a thing unknown to the law. The principles applicable to waiver of a tort have no application. In all such cases, a legal right, not a mere equitable one, is invaded, and, upon it, the law founds a promise. Here it cannot do so on that principle, for there was no legal right in the plaintiff.

If the land had been sold, the right of the plaintiff to sue at law would be plain. Then the purpose of the trust, that for which the legal and equitable titles were separated, would have been fully accomplished, the trust ended and the legal and equitable titles reunited. The defendant would then have had money in his hands belonging to the plaintiff. The many cases, illustrating this principle, need not be cited, as a little investigation will readily disclose them.

Subject to the exception here indicated, I concur in the decision.